TEXAS A & M UNIVERSITY–
KINGSVILLE, et al.,
Petitioners,

v.

Grant M. LAWSON, Respondent.

No. 00–1127.

Supreme Court of Texas.

Argued Nov. 14, 2001.

Decided June 20, 2002.

John Cornyn, Attorney General of the State of Texas, Jeffrey S. Boyd, Office of the Attorney General, Julie Caruthers Parsley, Office of the Solicitor General of Texas, Austin, Meredith Bishop Parenti, Weil Gotshal & Manges, Cherry K. (Wolf) Bounds, College Station, for Petitioners.

Bradley Lee Houston, Austin, for Respondent.

Justice HECHT delivered a plurality opinion, in which Chief Justice PHILLIPS, Justice OWEN, and Justice JEFFERSON joined.

If a government entity agrees to settle a lawsuit from which it is not immune, can it claim immunity from suit for breach of the settlement agreement? We answer no and accordingly affirm the judgment of the court of appeals.[1]

After Texas A & M University—Kingsville terminated Grant M. Lawson's employment as a faculty member and clarinet instructor, he sued the University for violations of the Whistleblower Act[2]; viola-

1. 28 S.W.3d 211.

2. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 832, §§ 1–6, 1983 Tex. Gen. Laws 4751, 4751–53, *repealed and recodified by* Act of April 30, 1993, 73rd Leg., R.S., ch. 268, §§ 1, 46, 1993 Tex. Gen. Laws 583, 609–11, *amend-*

tions of his constitutional freedoms of association, expression, petition, and privacy; and interference with business relations. The University filed a plea to the jurisdiction asserting that all of Lawson's claims were barred by sovereign immunity. The trial court sustained the plea except as to Lawson's Whistleblower Act claim and his constitutional claims for equitable relief. The parties then reached a settlement agreement according to which the University paid Lawson $62,000 and Lawson released his claims and dismissed the action with prejudice. Although the University contends that Lawson had only been an instructor and never a professor, it also agreed as part of the settlement:

> Any official inquiry made to the university regarding Lawson's employment shall be referred to the director of personnel. The director of personnel shall respond by confirming that Lawson was employed as an assistant professor at a salary of $31,000 a year, inclusive of benefits. The director of personnel shall state that he may not provide any other information.

Sometime later, Lawson brought the current action against the University for breach of the settlement agreement, alleging that the University had responded to inquiries from Lawson's potential employers differently than it had agreed. Specifically, Lawson claims that the University's director of personnel told one potential employer that Lawson had been an "instructor" and refused to elaborate on what

that meant. The University filed a plea to the jurisdiction based on sovereign immunity, which the trial court denied with this explanation:

> when somebody sues the state and the court has jurisdiction over that case, which the court did in [Lawson's earlier lawsuit], and that case is settled by the state and the state doesn't live up to the settlement agreement, a plaintiff can bring a suit to enforce or seek damages for violation of that settlement agreement and the state has waived its sovereign immunity, or doesn't have any sovereign immunity, however, you want to look at it, when you're talking about the settlement of a case within the court's jurisdiction.

The University took an interlocutory appeal,[3] arguing that Lawson's action is barred, first, because governmental entities are immune from suit for breach of contract, and second, because the settlement agreement required the University to misrepresent that Lawson had been an assistant professor and was therefore void as against public policy. The court of appeals affirmed the judgment of the trial court but for a different reason than that court had given. The court of appeals held as it had in other cases, "that state agencies waive their immunity from suit by accepting some of the benefits of a contract and refusing to pay for them."[4] The court also held that even if the settlement agreement was void—an issue the

---

ed by Act of May 25, 1995, 74th Leg., R.S., ch. 721, §§ 1–10, 1995 Tex. Gen. Laws 3812, 3812–14 (current version at Tex. Gov't Code §§ 554.001–.010).

**3.** Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court ... that ... grants or denies a plea to the jurisdiction by a governmental unit....").

**4.** 28 S.W.3d at 214 (citing *Texas Natural Resource Conservation Comm'n v. IT–Davy*, 998 S.W.2d 898, 902 (Tex.App.-Austin 1999), *rev'd*, 74 S.W.3d 849 (Tex.2002); *Aer–Aerotron, Inc. v. Tex. Dep't of Transp.*, 997 S.W.2d 687, 691–92 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 220 (Tex.2001); *Little–Tex Insulation Co. v. Gen. Servs. Comm'n*, 997 S.W.2d 358, 364 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex.2001)).

court did not decide—the University was still not immune from suit.[5]

We granted the University's petition for review.[6] The University makes the same arguments here that it made in the court of appeals.

This Court has jurisdiction over an interlocutory appeal when the court of appeals "holds differently" from a prior decision of another court of appeals or of the supreme court.[7] This "conflicts" jurisdiction exists, we have said, when "the rulings in the two cases are 'so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other' ",[8] the test being whether one case " 'would operate to overrule the other' " [9] had both decisions been rendered by the same court.[10] The University contends that the Third Court of Appeals' opinion here is in such conflict with the prior opinion of the Seventh Court of Appeals in *Ho v. University of Texas*.[11] In *Ho*, the plaintiff sued the University of Texas for, among other things, breach of contract after being dismissed from its doctoral program. The court of appeals held that

the action was barred by sovereign immunity, rejecting the plaintiff's argument that the University "by its conduct, . . . had waived its sovereign immunity." [12] The court stated that "the only exception we have found in which the State, by its own actions waives immunity, is that which applies when the State initiates a suit." [13] Because the Third Court of Appeals, had it decided *Ho*, would have had to overrule that case in order to rule for Lawson in this case, the test for conflicts jurisdiction is satisfied, and we have jurisdiction over this interlocutory appeal.

In Texas, the bar of sovereign immunity is a creature of the common law and not of any legislative enactment.[14] It protects the government both from liability and from suit.[15] We have held that a governmental entity by entering into a contract waives immunity from *liability* for breach of the contract but does not, merely by entering into a contract, waive immunity from *suit*.[16] Since the court of appeals' ruling in the present case, we have also rejected its view that immunity from suit

---

5. *Id.* at 215.

6. 44 Tex. Sup.Ct. J. 760 (May 24, 2001).

7. Tex. Gov't Code §§ 22.225(b), (c); 22.001(a)(2).

8. *Christy v. Williams*, 156 Tex. 555, 298 S.W.2d 565, 567 (1957) (quoting *Dockum v. Mercury Ins. Co.*, 134 Tex. 437, 135 S.W.2d 700, 701 (1940)).

9. *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319–20 (Tex.1998) (quoting *Christy*, 298 S.W.2d at 568–69).

10. *See Texas Natural Resource Conservation Comm'n v. White*, 46 S.W.3d 864, 867 (Tex. 2001); *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 430 (Tex.2000); *Coastal Corp.*, 979 S.W.2d at 319.

11. 984 S.W.2d 672 (Tex.App.-Amarillo 1998, pet. denied).

12. *Id.* at 682 (citing *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex.1997)).

13. *Id.* at 683.

14. *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847) (recognizing doctrine, without citation of authority); *Board of Land Comm'rs v. Walling*, Dall. 524, 1843 WL 3919 (Tex.1843) (recognizing doctrine, without citation of authority); *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998) (referring to "the common law doctrine of sovereign immunity").

15. *Missouri Pac. R.R.v. Brownsville Nav. Dist.*, 453 S.W.2d 812, 813–814 (Tex.1970).

16. *General Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001); *Federal Sign*, 951 S.W.2d at 408.

is waived merely by accepting some of the benefits of a contract.[17] We likewise disagree with that basis for the court of appeals' ruling in this case.

"Historically, we have left to the Legislature whether to waive sovereign immunity."[18] In individual cases, the Legislature may waive immunity by resolution.[19] Lawson has not obtained such a waiver. For some types of claims, the Legislature has waived immunity by statute, as for example in the Whistleblower Act for suits alleging violations of its provisions.[20] For breach of contract claims, the Legislature has waived immunity in some instances but not all [21] and has created administrative processes for handling certain contractual disputes with the government.[22] Lawson's action for breach of a settlement agreement does not fall within any such waiver or administrative process for contractual claims.

■ But as just noted, the Legislature has waived immunity from suit for violations of the Whistleblower Act, which was one of Lawson's claims in his earlier suit against the University and his only claim for damages that survived the University's plea to the jurisdiction. Lawson was therefore entitled to sue the University for violating the statute and if he prevailed, to hold the University liable. We agree with the trial court that when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued. The government cannot recover waived immunity by settling without defeating the purpose of the waiver in the first place. Such a rule would limit settlement agreements with the government to those fully performed before dismissal of the lawsuit because any executory provision could not thereafter be enforced. One can easily envision circumstances like those now before us when settlement on terms acceptable to the parties either would not be possible or would delay dismissal of the lawsuit. We do not think the Legislature intended by waiving the bar of immunity for claims under the Whistleblower Act that settlements would be prevented or delayed by a revival of the bar in the form of immunity from suit for breach of settlement agreements. While it is certainly true, as the University argues, that a suit for breach of a settlement agreement is separate and apart from the suit on the settled claim, enforcement of a settlement of a liability for which immunity is waived should not be barred by immunity.

**17.** *Texas Natural Resource Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849 (Tex. 2002); *Little–Tex Insulation Co.,* 39 S.W.3d at 591; *Texas Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220 (Tex.2001).

**18.** *Little–Tex Insulation Co.,* 39 S.W.3d at 595 (citing *Federal Sign,* 951 S.W.2d at 409; *Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 813 (Tex.1993); *Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978); *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976)).

**19.** Tex. Civ. Prac. & Rem.Code §§ 107.001–.005.

**20.** Tex. Gov't Code § 554.0035 (current provision); *City of LaPorte v. Barfield,* 898 S.W.2d 288, 296 (Tex.1995).

**21.** *Federal Sign,* 951 S.W.2d at 408 (citing *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813–814 (Tex. 1970) (holding that a statute authorizing a navigation district to "sue and be sued" waived immunity); *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 839–41 (1958); *Herring v. Houston Nat'l Exch. Bank,* 114 Tex. 394, 269 S.W. 1031, 1033 (1925)).

**22.** *E.g.* Tex. Gov't Code §§ 2260.001–.108 (contracts for goods and services); Tex. Transp. Code § 201.112 (contracts for construction of certain public projects).

This conclusion does not detract from the reasons for the Legislature's role in deciding whether to waive sovereign immunity for contract claims. We have identified four:

- "the handling of contract claims against the government involves policy choices more complex than simply waiver of immunity," including whether to rely on administrative processes and what remedies to allow; [23]

- the government should not be kept from responding to changing conditions for the public welfare by prior policy decisions reflected in long-term or ill-considered obligations; [24]

- the claims process is tied to the appropriations process, and the priorities that guide the latter should also inform the former; [25] and

- the Legislature is able to deal not only with these policy concerns but also with individual situations in deciding whether to waive immunity by resolution, cases by case, or by statute.[26]

Allowing suit against the government for breach of an agreement settling a claim for which immunity has been waived does not interfere with the Legislature's policy choices. On the contrary, having determined to allow suits on such claims and prescribed the available remedies, the Legislature must surely have considered—indeed, hoped—that claims would often be settled. If anything, for the government to be immune from the enforcement of such settlements would impair the purposes of the waiver by limiting its effectiveness in cases not tried to a final judgment. Nor are such settlements the kind

of agreements likely to impose obligations on the government that would constrain future policy decisions or impair public welfare. In appropriating funds to pay claims for which immunity has been waived there is nothing to indicate that the Legislature has ever distinguished between judgments and settlements or that it would have a good reason to do so. And finally, there is no reason to treat claims as a class for waiver of immunity while treating settlements of those claims on a case-by-case basis.

This all assumes, of course, that a governmental entity would not, in settling a suit for which immunity has been waived, undertake an obligation that exposes it to liability much greater or different than that which it faced from the original claim. But we think this assumption is a realistic one. A settlement of a claim trades unknowns—such as what the evidence will be, and how a jury will view it—for knowns—obligations that are more accurately assessable. In reaching a settlement, the government is guided by legal counsel to help gauge the degree of exposure to liability and the fairness of the settlement. Once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision.

■ The State should not regain waived immunity by settling a case. Accordingly, while we reject the court of appeals' adoption of a broad waiver-by-conduct exception to sovereign immunity, we hold that, having waived immunity from suit in the Whistleblower Act, the State may not now

---

**23.** *Texas Natural Resource Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856 (Tex. 2002); *Federal Sign*, 951 S.W.2d at 413–414 (Hecht, J., concurring).

**24.** *IT–Davy*, 74 S.W.3d at 856; *Federal Sign*, 951 S.W.2d at 414 (Hecht, J., concurring).

**25.** *IT–Davy*, 74 S.W.3d at 856; *Federal Sign*, 951 S.W.2d at 414 (Hecht, J., concurring).

**26.** *IT–Davy*, 74 S.W.3d at 856; *Federal Sign*, 951 S.W.2d at 414 (Hecht, J., concurring).

claim immunity from a suit brought to enforce a settlement agreement reached to dispose of a claim brought under that Act.

We disagree with the dissent, of course, that our decision ignores established law. To the contrary, we have tried to apply carefully the principles of our prior decisions. We acknowledge that a suit for breach of a settlement agreement is separate from the action that was settled,[27] but that simply does not answer whether the one is barred by immunity when the other was not. In resolving this issue, we have concluded that the dissent's rigid view of immunity from suit for breach of contract would impair the effectiveness of the legislative waiver of immunity expressed in the Whistleblower Act by pressuring the government and some claimants to remain in litigation rather than settle. Despite the dissent's charges that we have departed from precedent, this is simply not an issue we have confronted before today.

We agree with the court of appeals that it makes no difference that the University's promise to misstate Lawson's former position—if indeed that was the effect of the agreement—is void. Immunity from suit does not turn on the validity of the settlement agreement sued on. Nor can we determine the validity of the agreement in the posture the case comes to us on interlocutory appeal from the denial of the University's plea to the jurisdiction. No evidence or argument on the validity of the agreement was offered in the trial court.

That issue remains for determination in further proceedings on remand.

The judgment of the court of appeals is *Affirmed.*

Justice ENOCH filed an opinion concurring in the judgment.

Justice RODRIGUEZ filed a dissenting opinion, in which Justice BAKER, Justice HANKINSON, and Justice O'NEILL joined.

Justice ENOCH filed a concurring opinion.

I join the Court's judgment, but only because I maintain that the Legislature, by authorizing state agencies to enter into contracts, has expressly waived sovereign immunity.[1] The University executed the settlement agreement; thus it may not interpose sovereign immunity as a defense to suit on the agreement.

The Court struggles to tie the waiver of sovereign immunity underlying the Whistleblower Act cause of action, which was settled, to the current litigation over the settlement agreement. The dissent responds that the Court sidesteps our traditional rule that the enforcement of a settlement agreement is a separate breach-of-contract action.[2] This is an unnecessary argument that arises solely because the Court refuses to recognize, though virtually all other state jurisdictions have, that by

---

**27.** *Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 658–659 (Tex.1996).

**1.** *See Federal Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 416 (Tex.1997) (Enoch, J., dissenting); *see also Travis County v. Pelzel & Assoc. Inc.,* 77 S.W.3d 246, 252 (Tex.2002) (Enoch, J., dissenting); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 863 (Tex. 2002) (Enoch, J., dissenting); *Gen. Serv.*

*Comm'n v. Little–Tex Insulation Co. Inc.,* 39 S.W.3d 591, 602 (Tex.2001) (Enoch, J., dissenting); *Tex. Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220, 221 (Tex.2001) (Enoch, J., dissenting).

**2.** *See Tex. A & M Univ.-Kingsville v. Lawson,* 87 S.W.3d 518, 524 (Tex.2002) (Rodriguez, J., dissenting); *see also Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 658–59 (Tex.1996).

entering into a contract, the state waives sovereign immunity.[3]

I concur in the Court's judgment.

Justice RODRIGUEZ, joined by Justice BAKER, Justice HANKINSON, and Justice O'NEILL, dissenting.

Although the State may waive its immunity from liability by contracting, this Court has repeatedly held that the State does not waive its immunity from suit simply by entering into a contract, and therefore a private citizen must have legislative consent to sue the State on a breach-of-contract claim. *See, e.g., Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex.1997). Lawson sued the University for breach of contract, and thus the University has immunity from Lawson's suit unless the Legislature has waived that immunity. The plurality concedes that the Legislature has not waived immunity for Lawson's breach-of-contract claim. Nevertheless, the plurality sidesteps recent precedent concerning sovereign immunity in breach-of-contract suits, wholly ignores established law that a suit for breach of a settlement agreement is independent of the settled claim, and erroneously concludes that the University may not assert immunity. Because the plurality defies precedent to impose a judicial waiver of sovereign immunity on an ordinary breach-of-contract claim, I respectfully dissent.

Lawson sued the University for allegedly violating the terms of a settlement agreement they executed to finally resolve Lawson's previous suit against the University for various wrongful termination claims. Although the contract at issue is a settlement agreement, the Legislature and this Court have clearly established that a settlement agreement is nevertheless a contract and is treated the same as any

other written contract. *See* TEX. CIV. PRAC. & REM.CODE § 154.071(a) ("[A settlement] agreement is enforceable in the same manner as any other written contract."); *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658–59 (Tex.1996) (holding that a suit to enforce a settlement agreement is a separate breach-of-contract action). Lawson asserts only a claim for breach of contract, and he alleges that the University failed to satisfy its contractual obligations under the terms of the settlement agreement. He alleges no facts that differentiate his suit from an ordinary breach-of-contract claim for which the State retains its sovereign immunity. His only allegations concerning immunity are that the University waived immunity by entering and partially breaching the contract. But that does not waive sovereign immunity. *See Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 251 (Tex. 2002); *see also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 851 (Tex.2002). Accordingly, the University has sovereign immunity from Lawson's suit.

Despite this settled law, the plurality concludes that because the Legislature waived immunity for Lawson's Whistleblower Act claim in his wrongful termination suit, that waiver somehow applies to the current, independent breach-of-contract suit, for which the Legislature has not waived immunity. To reach its result, the plurality ignores well-established law that once the trial court's plenary jurisdiction expires, a suit to enforce a settlement agreement is a separate breach-of-contract action. *See Mantas*, 925 S.W.2d at 658–59. The claim must be proved as any other breach-of-contract claim, and is independent of the underlying claim, which the agreement necessarily supersedes. Here, the trial court did not expressly retain any

---

**3.** *See Federal Sign,* 951 S.W.2d at 419 (Enoch, J., dissenting).

continuing jurisdiction, and its plenary power over Lawson's wrongful termination suit had long expired. Thus, Lawson's suit for breach of the settlement agreement is independent of his wrongful termination claims.

The plurality frames the issue as being: "If a government entity agrees to settle a lawsuit from which it is not immune, can it claim immunity from suit for breach of the settlement agreement?" But that is not the issue presented in this case. Rather, the issue here is whether the State may assert sovereign immunity in an ordinary breach-of-contract case, and the answer to that question is decidedly "yes." Lawson asserted a breach-of-contract claim against the University, and the State has sovereign immunity on that claim. When Lawson settled, he traded in his wrongful termination claims for a settlement contract, and, in addition to accepting $62,000, he accepted the risk that the State could assert immunity if it breached the contract, just as all people who contract with the State accept that risk. Although such a risk might discourage some parties from contracting with the State, that risk has not daunted the Court before. *See Pelzel*, 77 S.W.3d at 252; *IT–Davy*, 74 S.W.3d at 856; *Fed. Sign*, 951 S.W.2d at 408. Moreover, those who settle for cash and receive payment before dismissing their suit take no risk that the State will assert immunity. Thus, contrary to the plurality's fears, only a handful of settlements in which the private party insists on executory provisions rather than only a cash settlement would be discouraged.

Rather than deferring to the Legislature to decide whether to waive sovereign immunity for claims asserting breaches of settlement agreements when immunity is waived on a settled claim, the plurality creates its own judicial waiver. The plurality claims that it is merely applying the Legislature's waiver of immunity on the Whistleblower Act claim, consistent with the Legislature's policy choices. But the plurality's extension of the waiver of sovereign immunity on the Whistleblower Act claim to the independent breach-of-contract claim does not satisfy the requirement that legislative consent to sue the State must be expressed in "clear and unambiguous language." *Pelzel*, 77 S.W.3d at 248; *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994); *see also* TEX. GOV'T CODE § 311.034. If the Legislature intended the waiver of sovereign immunity to apply to settlement agreements for which sovereign immunity was waived on the underlying claim, it could say so expressly, but it has not. The Legislature has made a policy decision that government entities should not be immune from suit for Whistleblower Act violations, but the Legislature has not made such a policy choice for ordinary breach-of-contract claims such as Lawson's.

In grafting the Legislature's sovereign immunity waiver for the Whistleblower Act claim onto Lawson's independent breach-of-contract claim, the plurality disregards the fact that the conduct involved here—allegedly failing to represent that Lawson was employed as an assistant professor instead of an instructor—is different from that at issue in the wrongful termination suit and simply has nothing to do with the Whistleblower Act. Indeed, the fact that the Court was not even informed that one of Lawson's claims in the wrongful termination suit was a Whistleblower Act claim until the University filed additional briefing after oral argument demonstrates the settled claims' irrelevance in determining whether immunity was waived in the current breach-of-contract suit.

This is nothing more than an ordinary contract dispute. Unless waived, the State retains its immunity from suit on a contract, whether the contract is for goods

and services or a settlement agreement. We have repeatedly held that sovereign immunity in ordinary contract claims is an area best left to legislative judgment. *See York,* 871 S.W.2d at 177 ("[T]he waiver of governmental immunity is a matter addressed to the Legislature."). Deference to the Legislature to determine sovereign immunity in ordinary breach-of-contract cases claiming waiver by conduct is founded on sound policy. *See Fed. Sign,* 951 S.W.2d at 413 (Hecht, J., concurring) ("There are compelling reasons for this Court to continue to defer to the Legislature."). Yet today the plurality overrides those compelling reasons and concludes that although the Legislature has not chosen to waive sovereign immunity for this breach-of-contract claim, the University simply "may not" claim immunity in this case.

The plurality says, "Once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision." 87 S.W.3d at 522. The plurality makes this leap on faith alone, because it is certainly inconsistent with this Court's previous decisions. *See Pelzel,* 77 S.W.3d at 248 ("Express consent is required to show that immunity from suit has been waived.... The consent must be expressed by 'clear and unambiguous language.'") (citing TEX. GOV'T CODE § 311.034 and *Fed. Sign,* 951 S.W.2d at 405, 408); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 594 (Tex.2001) (same).

I would apply settled law, hold that the Legislature has not waived immunity from suit for Lawson's breach-of-contract claim, and dismiss the case for want of jurisdiction. Accordingly, I dissent.