

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00603-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

**DHL EXPRESS (USA), INC.**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-02683
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: January 25, 2023

REVERSED AND RENDERED

This is an interlocutory appeal from the trial court's order denying the City of San Antonio's plea to the jurisdiction. The City argues that its lease agreement with DHL to use City-owned airport property does not waive the City's immunity, and DHL's claims for breach of contract, declarations, and attorney's fees are barred. We agree.

We reverse the trial court's order and render judgment dismissing DHL's suit for want of jurisdiction.

**BACKGROUND**

DHL Express (USA), Inc., an international express transportation company, has been a tenant at the San Antonio International Airport since 1990.

**A.     Lease Agreement**

In May 2020, DHL executed a five-year lease agreement for property at the eastern edge of the San Antonio International Airport.  The agreement restricted the leased airport property to "only be used for aeronautical activities or those that directly support the aeronautical activities." On August 6, 2020, the City Council of the City of San Antonio approved a city ordinance authorizing the five-year lease.

**B.     Alleged Default**

About three weeks later, the City notified DHL by letter that DHL was in default under the lease agreement.  The City claimed that DHL had stopped receiving air freight from flights landing in San Antonio.  Instead, DHL's flights landed at Austin-Bergstrom International Airport and then the freight was trucked to San Antonio International Airport for processing and distribution.  The City insisted that DHL was violating the lease provision that the "Leased Premises shall only be used for aeronautical activities or those that directly support the aeronautical activities."  After some discussions, the parties could not agree on whether DHL was violating the lease's terms.

**C.     Declaratory Judgment Action; Plea to the Jurisdiction**

DHL sought a declaratory judgment to determine whether it was in violation of the lease. The City filed a plea to the jurisdiction asserting its immunity from suit, and DHL filed its response.  The parties agreed to reset the hearing on the City's plea to give DHL time to amend its pleadings.  The City amended its plea to the jurisdiction, and DHL amended its suit to add a claim for breach of contract.

After a hearing, the trial court denied the City's plea, and the City appeals.

PARTIES' ARGUMENTS

The jurisdictional facts in this case are undisputed. Neither party challenges (1) the existence or validity of the lease agreement or (2) the City's status as a local governmental entity, and both sides agree the City's lease of the airport property to DHL is a governmental function. The parties' dispute centers on whether DHL may sue the City for breach of contract, declaratory relief, and attorney's fees.

### A. DHL's Arguments

DHL argues that the City's immunity from suit is waived under section 271.152 of the Local Government Code because two lease agreement provisions show DHL will provide goods or services to the City. Thus, with the City's immunity waived, DHL may seek declaratory judgment regarding whether it has violated the lease agreement and seek an award of its attorney's fees.

### B. City's Arguments

The City insists its immunity has not been waived. First, it argues that the Declaratory Judgments Act does not waive its immunity in this case. Second, it argues that the Local Government Code's waiver of immunity for a suit for breach of contract does not apply because the lease agreement does not require DHL to provide goods or services to the City.

Before we address the parties' arguments, we briefly recite the standard of review for the trial court's order denying a plea to the jurisdiction.

STANDARD OF REVIEW

"Governmental immunity generally protects local governmental entities against both lawsuits and legal liabilities." *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366 (Tex. 2019).

A local governmental entity is immune from suit for a breach of contract claim if the contract is for the performance of a governmental function and no statutory waiver of immunity applies. *See San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 622–23 (Tex. 2020); *Wasson Ints., Ltd. v. City of Jacksonville* (*Wasson I*), 489 S.W.3d 427, 439 (Tex. 2016) (applying the "common-law distinction between governmental and proprietary acts . . . in the contract-claims context).

"[T]he assertion of . . . governmental immunity implicates the trial court's jurisdiction and may therefore be asserted in a plea to the jurisdiction." *Chambers-Liberty Cntys. Nav. Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019); *accord Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004).

To withstand the defendant's plea to the jurisdiction, the plaintiff must plead facts that show the governmental entity's immunity has been waived. *Town of Flower Mound v. Rembert Enters.*, 369 S.W.3d 465, 471 (Tex. App.—Fort Worth 2012, pet. denied) (citing *Miranda*, 133 S.W.3d at 226).

Whether the governmental entity's immunity has been waived—which affects the trial court's subject matter jurisdiction—is a question we review de novo. *Miranda*, 133 S.W.3d at 226; *City of San Antonio v. Alamo Aircraft Supply, Inc.*, 448 S.W.3d 507, 510 (Tex. App.—San Antonio 2014, no pet.).

## WAIVING IMMUNITY FROM SUIT

The legislature has waived governmental entities' immunity from suit in certain circumstances. For example, "[a] local governmental entity that . . . enters into [an authorized] contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152; *accord Vizant Techs.*, 576 S.W.3d at 367.

A "'[c]ontract subject to this subchapter' means . . . a written contract stating the essential terms of the agreement *for providing goods or services to the local governmental entity* that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151 (emphasis added); *accord Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 302 (Tex. 2014) (recognizing that "the provision of goods and services [does] not [have to be] the primary purpose of the contract").

But "[w]hen a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity." *Church & Akin*, 442 S.W.3d at 303 (citing *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010)).

Further, "the UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'" *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (quoting *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) ("While the DJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity.")). Specifically, "sovereign immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity." *Sawyer Tr.*, 354 S.W.3d at 388 (citing *City of Houston v. Williams*, 216 S.W.3d 827, 828 (Tex. 2007) (per curiam)).

## DISCUSSION

Here, the jurisdictional facts are undisputed, and we review the questions of law de novo. *See Miranda*, 133 S.W.3d at 226; *Alamo Aircraft Supply*, 448 S.W.3d at 510. The City argues the trial court erred by denying its plea to the jurisdiction because its immunity from suit was not waived. Having reviewed the undisputed evidence and the law, we agree.

## A.     Airport Lease a Governmental Function

The Texas Legislature has determined that "the planning, acquisition, establishment, construction, improvement, equipping, maintenance, operation, regulation, protection, and policing of an airport" is a governmental function. TEX. TRANSP. CODE ANN. § 22.002(a); *accord Vizant Techs.*, 576 S.W.3d at 367; *Elizabeth Benavides Elite Aviation, Inc. v. City of Laredo*, No. 04-19-00717-CV, 2020 WL 2044678, at \*3 (Tex. App.—San Antonio Apr. 29, 2020, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10) (including airports as a governmental function).

The lease between DHL and the City allows DHL to process air cargo at the airport, and it expressly states that the "Leased Premises shall only be used for aeronautical activities or those that directly support the aeronautical activities."

We conclude, as do the parties, that the lease agreement is a contract for the performance of a governmental function. *See Vizant Techs.*, 576 S.W.3d at 367; *Elizabeth Benavides Elite Aviation*, 2020 WL 2044678, at \*3. Thus, the City has immunity from suit—unless a statutory waiver of immunity applies.

## B.     Waiver of Immunity under Chapter 271

The City argues its immunity from suit is not waived by Chapter 271 of the Local Government Code; it notes that "generally, contracts for land leases—such as the contract at issue [in the *Wasson* case]—are not covered by Chapter 271." *Wasson I*, 489 S.W.3d at 437 (citing TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A)).

DHL argues the City's immunity from suit is waived under section 271.152 because the lease agreement requires DHL to provide goods and services to the City. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 ("Waiver of Immunity to Suit for Certain Claims").

*1.      Applicable Sections*

Section 271.152 waives a local governmental entity's immunity from suit for a plaintiff to adjudicate a claim for breach of contract—in some cases.  *See* TEX. LOC. GOV'T CODE ANN. § 271.152.

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152.

A "[c]ontract subject to this subchapter" must be "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."  TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A).

*2.      Lease Agreement Elements*

Here, the lease agreement is a written contract which states the essential terms of the agreement and was properly executed on behalf of the City.  *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A); *Elizabeth Benavides Elite Aviation*, 2020 WL 2044678, at *3.  The remaining question is whether the lease is an agreement for providing goods or services to the City.  *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A); *Elizabeth Benavides Elite Aviation*, 2020 WL 2044678, at *3.

*3.      Lease as a Contract for Goods or Services*

DHL argues that the lease anticipates that DHL "would provide additional services to the City through the operation of the lease."  Specifically, DHL points to two articles in the lease.

a.    Lease Article 13

DHL first cites part of Article 13, but it paraphrases the article; we quote the DHL-referenced portion of the article's language:

> 13.01 Lessee shall have the *right* to erect, alter, remodel and renovate buildings and other improvements on the Leased Premises, provided that it shall submit to the Aviation Director plans and specifications prepared by registered architects and engineers setting forth the renovations, construction, alterations or improvements that Lessee desires to perform, in such detail as may be required by the Aviation Director, and provided that approval of such plans and specifications by said Director is obtained as set forth below.  (Emphasis added).

Article 13 gives DHL the *right* to erect or modify buildings on the leased premises, subject to the City's approval, but no language in Article 13 *requires* DHL to do so.

Because the lease does not require DHL to build new facilities or upgrade existing ones, "the mere fact that [the City] may receive services as a result of the [lease] is insufficient to invoke chapter 271's waiver of immunity."  *See Church & Akin*, 442 S.W.3d at 303 (citing *Kirby Lake*, 320 S.W.3d at 839).

Article 13 does not convert the lease agreement into a contract for providing goods or services to the City.  *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A); *Church & Akin*, 442 S.W.3d at 303; *E. Hous. Est. Apts., L.L.C. v. City of Houston*, 294 S.W.3d 723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("If every contract that confers some attenuated benefit on a governmental entity constitutes a contract for a 'service,' the limitation of contracts covered by section 271.152 to 'contract for goods or services provided to the entity' loses all meaning.").

b.    Lease Article 15

DHL next points to Article 15's Maintenance and Repair requirements to show that DHL "would provide additional services to the City through the operation of the lease."  DHL cites *Ben Bolt* to argue that we should consider "services" broadly, and thereby Article 15's requirements show DHL is required to deliver services to the City.  *See Ben Bolt-Palito Blanco Consol. Indep.*

*Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006).

But *Ben Bolt* is distinguishable on its facts, and subsequent opinions from the supreme court with more closely analogous facts have addressed the meaning of services and when a contract requires them. *See, e.g.*, *Church & Akin*, 442 S.W.3d at 303–05; *Kirby Lake*, 320 S.W.3d at 839.

In this case, Article 15 states in relevant part as follows:

> 15.02 Except as may be otherwise provided herein, [DHL] shall, throughout the term of this Lease Agreement and any extension hereof, assume the entire responsibility, cost and expense, for all repair and maintenance of the Leased Premises and all buildings and improvements thereon, whether such repair or maintenance be ordinary, extraordinary, structural or otherwise.

The succeeding subparagraphs in Article 15 provide additional details about what aspects of the leased premises DHL must maintain and repair, e.g., fixtures, equipment, windows, grass, etc., but no language in Article 15 requires DHL to deliver goods or services to the City. *Contra* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A) (defining a "[c]ontract subject to this subchapter" as one "for providing goods or services to the local governmental entity").

Article 15 merely requires DHL to not degrade the premises it has leased from the City or any improvements to the premises that DHL may choose to make. Further, no language in Article 15 states or implies that the City will pay DHL to maintain and repair the leased premises. *See Church & Akin*, 442 S.W.3d at 305 ("[T]he absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity.").

We conclude that the lease's requirement that DHL maintain and repair the leased premises is not a requirement to deliver goods or services to the City. *See id.*; *City of Weslaco v. De Leon*, No. 13-20-00561-CV, 2022 WL 3652501, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 25,

2022, no pet. h.) (mem. op.) ("A lessee's mere agreement to maintain the hangar free of trash and weeds is not a contract for services . . . especially when the City did not agree to pay the lessee to do so."); *Brazos River Auth. v. Brazos Elec. Power Co-op. Inc.*, No. 10-09-00403-CV, 2010 WL 2523438, at *1, *3 (Tex. App.—Waco June 23, 2010, pet. denied) (mem. op.) (recognizing that an agreement to possess, operate, and maintain a hydroelectric facility was not a contract for the lessee-operator to provide the river authority with goods or services).

Because the lease is not a contract for goods or services,[1] Chapter 271 does not apply: it does not waive the City's immunity from DHL's breach of contract claims.

We turn now to DHL's declaratory judgment claims, including attorney's fees.

## C.      Waiver of Immunity under Chapter 37

The City argues that DHL's declaratory judgment claims are not the type that waive immunity under the Uniform Declaratory Judgments Act (UDJA), *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011; *id.* § 37.004 (waiving immunity for a challenge to a municipal ordinance), and DHL's claims for declaratory relief and attorney's fees are barred by the City's governmental immunity.

DHL does not expressly disagree that the UDJA does not waive the City's immunity from suit. Instead, it argues "the trial court had jurisdiction over [DHL's] declarations based on the Local Government Code waiver contained in Chapter 271."

As we have explained above, the City's immunity from suit for DHL's breach of contract claims has not been waived under Chapter 271. *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.152, .152; *Church & Akin*, 442 S.W.3d at 303. And even if it applied here, which it does not, Chapter 271 does not waive a governmental entity's immunity from suit for declaratory judgment actions.

---

[1] DHL does not argue that the lease agreement pertains to the sale or delivery of reclaimed water to the City. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(B).

*Cf. Tex. Ass'n of Sch. Boards Risk Mgmt. Fund v. Benavides Indep. Sch. Dist.*, 221 S.W.3d 732, 740 (Tex. App.—San Antonio 2007, no pet.) ("If we had held that immunity from suit had not been waived with respect to the contractual claims, then the Fund would have been correct—the School District could not have circumvented immunity by characterizing their dispute as a declaratory-judgment claim.").

DHL has not shown how the City's immunity from suit has been waived for DHL's declaratory judgment claims, including attorney's fees. *See Rembert Enters.*, 369 S.W.3d at 471 (citing *Miranda*, 133 S.W.3d at 226) ("To invoke the trial court's subject matter jurisdiction over a claim arising out of a governmental entity's contractual obligations, the plaintiff must allege a valid waiver of immunity from suit and plead sufficient facts demonstrating the trial court's jurisdiction."). Thus, DHL's declaratory judgment claims, including its claim for attorney's fees, are barred. *See Sawyer Tr.*, 354 S.W.3d at 388.

**D.      City's Immunity from Suit Not Waived**

Because the City's immunity from suit was not waived under Chapter 271 or under the UDJA, the trial court erred in denying the City's plea to the jurisdiction.

We sustain the City's sole issue.

## CONCLUSION

In this interlocutory appeal from the trial court's order denying the City of San Antonio's plea to the jurisdiction, the undisputed evidence shows the lease agreement was not a contract for goods or services, and Chapter 271 does not waive the City's immunity from suit. Because Chapter 271 is the only basis to waive the City's immunity from suit that DHL asserted, we conclude that DHL's breach of contract and declaratory judgment claims are barred. We reverse the trial court's order and render judgment dismissing DHL's suit for want of jurisdiction.

Patricia O. Alvarez, Justice